## Gage vs. Coombs & trustees.

*C* and *D* entered into a written contract, by which *C* agreed to pay to *D* $3500 within six months, for one fourth part of a certain ship ; and *D* agreed that " when *C* should pay the full amount of the consideration aforesaid," he should receive a bill of sale of that part of the ship. *C* paid part of the money ; the six months elapsed ; and then *D* was summoned as the trustee of *C*. In his disclosure he disclaimed any intention of availing himself of the lapse of the six months to avoid the contract on his part ; and stated that he had received *C's* part of the ship's earnings on account of the balance due on the purchase-money ; but insisted that he had never waived his right to payment of the whole in six months ; that he was under no legal obligation to convey the fourth part to *C*; and that as between *C* and his creditors he should insist on his legal rights :—

Yet it was held that the facts disclosed by *D* amounted to a waiver of his right to punctual payment at the time stipulated ; and that he was chargeable, as the trustee of *C* for the value of one fourth part of the ship.

From the disclosure of the house of *N. & L. Dana & Co.* who were summoned in this case as the trustees of *Coombs*, it appeared that they had entered into a contract with *Coombs*, of the following tenor :—

" Memorandum of an agreement made this fourteenth day of *March*, 1826, between *N. & L. Dana & Co.* of the one part, and *James Coombs* of the other part, all of *Portland* in the State of *Maine*, witnesseth ;—That the said *Danas & Co.* agree to sell to the said *Coombs* one fourth part of the ship *Aurora* and appurtenances, with her ballast and ship stores on board, as she now lays at

Central wharf, for the consideration of three thousand five hundred dollars, to be paid to them in cash, or with interest from this date, until paid. And they further agree that when said *Coombs* shall pay to them the full amount of the consideration as aforesaid, that they will make and execute a bill of sale of the one fourth of said ship as aforesaid, and allow to him the nett earnings of said one fourth part of said ship, deducting premium for insurance thereon. And the said *Coombs* covenants with said *Danas & Co.* that he will truly pay over to said *Danas & Co.* the full amount of said thirty-five hundred dollars within six months from this date, with interest ; together with one fouttth part of all and singular the charges for manning and victualling said ship, and all port charges, premium for insurance, repairs or other charges ; in the same manner as if he was now the actual owner of said one fourth part of said ship ; deducting, as before stipulated, one fourth part of her earnings previous to the time she shall be conveyed by said *Danas & Co.* to said *Coombs.* And it is further agreed between the parties that the advance wages to the crew, and all supplies of cordage, duck, paints, oil and other articles deemed necessary for the future use of the ship, are to be paid by the parties in proportion to their interest therein as expressed by this instrument ; it being understood that the said *Danas & Co.* are to fit her for sea only."

On the following day they received of *Coombs* twenty-eight hundred dollars in part of the price he had undertaken to pay ; and soon afterwards he sailed as master of the ship on a foreign voyage. During his absence on this voyage the six months expired ; and after his return the trustees were summoned in this action. In their disclosure in the court below, in *October*, 1827, in a former action between these parties, which was made part of this case, they stated that the time of payment had elapsed ; but that they did not intend to avail themselves of that circumstance, but expected to receive the money on his return, and make him a conveyance of the property as described in the contract, and were ready so to do. They further stated that what they had received as *Coombs's* part of the ship's earnings had been received in part pay for the proportion sold to him, by agreement between them. And in their disclo-

sure made in the present action, they declared that they had never waived their right to insist on a strict compliance with the terms of the contract ; and were advised by their counsel that *Coombs* had no right to a conveyance of any part of the ship, and that what he had paid in part of the intended purchase was forfeited to them ; and they said that whatever they might intend hereafter to do, on a settlement with *Coombs*, they felt bound, in a controversy between him and his creditors, to stand upon their legal rights. They also exhibited an account of the ship's earnings and expenses ; and stated that it was their understanding that the earnings were to be applied to the payment of the purchase-money.

The other material facts disclosed by the trustees, will appear in the opinion of the Court, which was delivered at *May* term in *Oxford* by

MELLEN C. J. Two questions are presented by the disclosure. 1. Whether by the true construction of the agreement between *N. & L. Dana & Co.* the alleged trustees, and *Coombs*, dated the 14th of *March* 1827, he lost all remedy on the same, without the aid of extrinsic facts, by the nonpayment of the $3500, within six months from its date according to his stipulation. 2. If he did so, then whether the *Danas & Co.* have not waived all objections on account of the nonpayment within the six months.

As to the first question ; by the terms of the agreement it appears that though *Coombs* on his part agreed to pay the $3500 within six months, yet the *Danas & Co.* agreed that "when said *Coombs* shall pay to them the full amount of the consideration aforesaid, they will make and execute a bill of sale of the one fourth part of said ship as aforesaid, and to allow to him the nett earnings of said one fourth part of said ship, deducting premium for insurance thereon." We do not perceive why a construction should be given to this agreement, which should deprive *Coombs* of all right to a conveyance of the greater part of the ship, if the payment was not made within six months. There seems to be no reason for imposing such a limitation upon the word "when." Had they said "if said *Coombs* shall pay said sum within said six months, then," &c. a dif-

ferent construction would seem necessary. But we do not rest merely on this view of the case, because

2. We are satisfied that the *Danas & Co.* have distinctly waived all objections on account of the nonpayment within the six months, by their explicit declarations and avowals; honorably disclaiming all intention of taking any advantage which might operate as a hardship on *Coombs.* In their disclosure in this action they refer to one made in a former case, and it thereby becomes a part of the present disclosure. In the former one, made in *October* 1827, they say, "said *Coombs* paid us twenty eight hundred dollars in part of the purchase money, and sailed in the vessel, and has not yet returned. The last payment has fallen due since he sailed; but we do not intend to avail ourselves of that circumstance, but expect to receive the money on his return, and make him a conveyance of the property as described in the contract, and are now ready so to do." In the same disclosure they say, "what we have received of said earnings, belonging to said *Coombs,* has been received in part pay for the part of said ship sold to said *Coombs,* by agreement with him." In the disclosure in the present action they say, "as said *Coombs* never complied with the terms of the contract, and we never waived our rights under the same, we are advised by our counsel that he has no right to a conveyance of any part of the ship." They also say that it was their understanding that the earnings of the ship were to be applied to the payment of the sum due on the agreement; and by the terms of the agreement *Coombs* was to receive one fourth of her earnings, and bear one fourth of the expense, in the same manner as though he was then actual owner. Whatever opinion the *Danas & Co.* entertained on the subject of waiver, it is a question of law for us to decide, whether the facts and declarations stated in their disclosure amount to a waiver. The inquiry now is, whether prior to the service of the present process on the 21st of *August* 1830, the *Danas & Co.* had received, by way of the quarter part of the earnings of the ship, belonging to *Coombs,* the balance due, after deducting the $2800 paid and indorsed on the agreement. The trustees refer to the account annexed to their disclosure for a statement of the facts as to this point. By this it appears that on

the 17th of *July* 1830, a month before the service of the writ, the owners had received from the ship the amount of    $12465 12

And that the amount at and before that time paid
by them, was    -    -    -    -    -    7357 32

The balance being    -    -    -    -    -    $5107 80

One quarter part of the above balance belonged to *Coombs* amounting to    -    -    -    -    -    -    1226 95

It is stated that there was due from *Coombs* as master,   512 16

Leaving a balance of    -    -    -    -    $764 79

On this view of the cause and the account annexed to the disclosure, it appears that the balance of the purchase money, and more, was in the hands of the *Danas & Co.* before the service of the writ; that as early as *July* 1827, the owners had received    3885 87

And had then paid but    -    -    -    -    1369 17

Leaving in their hands a balance of    -    -    $2516 70

A quarter part of which is    -    -    -    629 17

So that at that time there were but about seventy one dollars of the principal due ; and, of course, it is manifest that the abovementioned balance of $764 79, was more than sufficient to extinguish the debt due from *Coombs* to the owners of the ship, sometime before this process was commenced.   And even as early as *September* 1828, it would seem by the account, that the debt was extinguished by the appropriation of *Coombs's* quarter part of the earnings, by agreement with him.   In either view of the case, as to the time of payment, we do not consider that it would have been necessary for *Coombs* to make any demand, to entitle him to maintain an action against the owners for the nonfulfilment of their engagement to convey one quarter part of the ship to him.   Certainly such a demand is not necessary to sustain this trustee process.  *Staples v. Staples, & tr.* 4 *Greenl.* 532.   As owners and receivers of the earnings, they were bound to know, and we must presume they did know, that the whole consideration money and interest had been paid.   It is evident that the parties contemplated a bill of sale as the completion and as the

evidence of *Coombs's* title to the quarter part of the ship ; and for the reasons assigned by them, they never considered him as entitled to one, or as lawful owner. They have excluded him from all rights as joint owner, and appropriated the ship to their own use and benefit, and claim to hold the quarter part as their property ; and we think that the plaintiff may also so consider them, and claim to hold them as responsible to *Coombs*, before the service of the writ, in damages for the violation of their contract ; the amount of which is not at this time a subject of inquiry. Our opinion is that the *Danas & Co.* must be

*Adjudged trustees.*

*Longfellow*, for the plaintiff.

*Greenleaf*, for the trustees.